T.C. Memo. 1996-527


UNITED STATES TAX COURT


LEON M. AND MARY K. JAROFF,[1] Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 18885-89, 27392-89.     Filed November 27, 1996.


Stuart A. Smith and David H. Schnabel, for petitioners.

Maureen T. O'Brien and David N. Brodsky, for respondent.

---

[1]     Docket Nos. 18885-89 and 27392-89 are consolidated for
purposes of trial, briefing, and opinion.

CONTENTS

Page

MEMORANDUM FINDINGS OF FACT AND OPINION........................ 2
OPINION OF THE SPECIAL TRIAL JUDGE............................. 3
FINDINGS OF FACT.............................................. 6
    A. The Plastics Recycling Transactions...................... 6
    B. The Partnerships........................................ 9
    C. Stuart Becker and Steven Leicht........................11
    D. Petitioners and Their Introduction to the Partnership
       Transactions...........................................15
OPINION......................................................20
    A. Section 6653(a)--Negligence............................22
       1.   The Private Offering Memoranda....................24
       2.   The So-Called Oil Crisis..........................30
       3.   Petitioners' Purported Reliance on a Tax
          Adviser...........................................33
            a.   The Circumstances Under Which a
               Taxpayer May Avoid Liability Under
               Section 6653(a)(1) and (2) Because
               of Reasonable Reliance on Competent
               and Fully Informed Professional
               Advice...........................................34
            b.   Becker and Tucker..............................36
       4.   Miscellaneous.....................................45
       5.   Conclusion as to Negligence.......................52
    B. Section 6659--Valuation Overstatement...................53
       1.   The Grounds for Petitioners' Underpayments.........54
       2.   Concession of the Deficiencies.....................59
       3.   Section 6659(e).....................................62
    C. Petitioners' Motion For Leave To File Motion For
       Decision Ordering Relief From the Negligence Penalty
       and the Penalty Rate of Interest and To File Supporting
       Memorandum of Law......................................65

MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, <u>Judge</u>:  These consolidated cases were assigned to Special Trial Judge Norman H. Wolfe pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183.  All section references are to the Internal Revenue Code in effect for the tax years in issue, unless otherwise indicated.  All Rule references are to the Tax Court Rules of Practice and Procedure.  The Court

agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

WOLFE, Special Trial Judge: These consolidated cases are part of the Plastics Recycling group of cases. For a detailed discussion of the transactions involved in the Plastics Recycling cases, see Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without published opinion 996 F.2d 1216 (6th Cir. 1993). The facts of the underlying transactions involving the Sentinel recyclers in these consolidated cases are substantially identical to those in the transaction considered in the Provizer case.

In a notice of deficiency dated May 24, 1989, respondent determined a deficiency in petitioners' 1982 Federal income tax in the amount of $8,119, and additions to tax for that year in the amount of $1,985 under section 6659[2] for valuation overstatement, in the amount of $406 under section 6653(a)(1) for negligence, and under section 6653(a)(1)(B)[3] in an amount equal to 50 percent of the interest due on the amount of the underpayment attributable to negligence, $6,619. Respondent also determined that interest on deficiencies accruing after December

---

[2]    In the alternative to the sec. 6659 addition to tax, respondent determined an addition to tax under sec. 6661 for substantial understatement of liability.

[3]    For taxable year 1982, the addition to tax for negligence in an amount equal to 50 percent of the interest due on the amount of the underpayment attributable to negligence was provided for under sec. 6653(a)(2), not sec. 6653(a)(1)(B).

31, 1984, would be calculated at 120 percent of the statutory rate under section 6621(c). The increased interest was calculated on the amount of $6,619. In her answer, respondent asserted that the entire deficiency was subject to the increased rate of interest under section 6621(c). In her trial memorandum, respondent asserted that the section 6659 addition to tax should be reduced to $1,550, and that only $6,619 of the deficiency was subject to section 6621(c) (as originally determined in the notice of deficiency). We consider the amounts in dispute in docket No. 18885-89 to be adjusted accordingly.

In a notice of deficiency dated August 18, 1989, respondent determined a deficiency in petitioners' 1981 Federal income tax in the amount of $20,837, and additions to tax for that year in the amount of $1,299 under section 6659 for valuation overstatement, in the amount of $1,042 under section 6653(a)(1) for negligence, and under section 6653(a)(2) in an amount equal to 50 percent of the interest due on the amount of the underpayment attributable to negligence. Respondent also determined that interest on deficiencies accruing after December 31, 1984, would be calculated at 120 percent of the statutory rate under section 6621(c). The increased interest was calculated on the amount of $4,329. In an amendment to answer, respondent asserted an increased addition to tax under section 6659 in the amount of $4,952, and also asserted that the entire deficiency of $20,837 was subject to the increased rate of

interest under section 6621(c).  We consider the amounts in dispute in docket No. 27392-89 to be adjusted accordingly.  For each of these consolidated cases, the parties filed a Stipulation of Settled Issues concerning the adjustments relating to petitioners' participation in the Plastics Recycling Program. The stipulations provide:

> 1.  Petitioners are not entitled to any deductions, losses, investment credits, business energy investment credits or any other tax benefits claimed on their tax returns as a result of their participation in the Plastics Recycling Program.
>
> 2.  The underpayments in income tax attributable to petitioners' participation in the Plastics Recycling Program are substantial underpayments attributable to tax motivated transactions, subject to the increased rate of interest established under I.R.C. §6621(c), formerly §6621(d).
>
> 3.  This stipulation resolves all issues that relate to the items claimed on petitioners' tax returns resulting from their participation in the Plastics Recycling Program, with the exception of petitioners' potential liability for additions to the tax for valuation overstatements under I.R.C. §6659 and for negligence under the applicable provisions of §6653(a).
>
> 4.  With respect to the issue of the addition to the tax under I.R.C. §6659, Petitioners do not intend to contest the value of the Sentinel Recycler or the existence of a valuation overstatement on the Petitioners' returns; however, Petitioners reserve their right to argue that the underpayment in tax is not attributable to a valuation overstatement within the meaning of I.R.C. §6659(a)(1), and that the Secretary should have waived the addition to tax pursuant to the provisions of I.R.C. §6659(e).

Long after the trial of these consolidated cases, on September 18, 1995, petitioners filed a Motion For Leave To File Motion For Decision Ordering Relief From the Negligence Penalty

and the Penalty Rate of Interest and To File Supporting
Memorandum of Law under Rule 50.  On that same date, petitioners
lodged with the Court a motion for decision seeking relief from
the additions to tax for negligence and the increased rate of
interest, with attachments, and a memorandum in support of the
motion.  Subsequently, respondent filed an objection, with
attachments, and a memorandum in support thereof, and petitioners
filed a reply memorandum.  For reasons discussed in more detail
at the end of this opinion, and also in Farrell v. Commissioner,
T.C. Memo. 1996-295, petitioners' motion shall be denied.  See
also Gollin v. Commissioner, T.C. Memo. 1996-454; Grelsamer v.
Commissioner, T.C. Memo. 1996-399; Zenkel v. Commissioner, T.C.
Memo. 1996-398.

The issues remaining in these consolidated cases are:  (1)
Whether petitioners are liable for the additions to tax for
negligence under the provisions of section 6653(a); and (2)
whether petitioners are liable for additions to tax under section
6659 for underpayments of tax attributable to valuation
overstatements.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.
The stipulated facts and attached exhibits are incorporated
herein by this reference.

A.  The Plastics Recycling Transactions

These consolidated cases concern petitioners' investments in

two limited partnerships that leased Sentinel expanded polyethylene (EPE) recyclers:  SAB Resource Recovery Associates (SAB Recovery) and SAB Resource Reclamation Associates (SAB Reclamation).  For convenience, we refer to these two partnerships collectively as the Partnerships.

The transactions involving the Sentinel EPE Recyclers leased by the Partnerships are substantially identical to those in the Clearwater Group limited partnership (Clearwater), the partnership considered in Provizer v. Commissioner, T.C. Memo. 1992-177.  Petitioners have stipulated substantially the same facts concerning the underlying transactions as we found in the Provizer case.

In the Provizer case, Packaging Industries, Inc. (PI), manufactured and sold six Sentinel EPE recyclers to ECI Corp. for $981,000 each.  ECI Corp., in turn, resold the recyclers to F & G Corp. for $1,162,666 each.  F & G Corp. then leased the recyclers to Clearwater, which licensed the recyclers to FMEC Corp., which sublicensed them back to PI.  The sales of the recyclers from PI to ECI Corp. were financed with nonrecourse notes.  Approximately 7 percent of the sales price of the recyclers sold by ECI Corp. to F & G Corp. was paid in cash with the remainder financed through notes.  These notes provided that 10 percent of the notes were recourse but that the recourse portion of the notes was only due after the nonrecourse portion, 90 percent, was paid in full.

All of the monthly payments required among the entities in

the above transactions offset each other.  These transactions were done simultaneously.  Although the recyclers were sold and leased for the above amounts under the structure of simultaneous transactions, the fair market value of a Sentinel EPE recycler in 1981 was not in excess of $50,000.

PI allegedly sublicensed the recyclers to entities that would use them to recycle plastic scrap.  The sublicense agreements provided that the end-users would transfer to PI 100 percent of the recycled scrap in exchange for a payment from FMEC Corp. based on the quality and amount of recycled scrap.

Like Clearwater, each of the Partnerships leased Sentinel EPE recyclers from F & G Corp. and licensed those recyclers to FMEC Corp.  The transactions of the Partnerships differ from the underlying transactions in the Provizer case in the following respects:  (1) The entity that leased the machines from F & G Corp. and licensed them to FMEC Corp., and (2) the number of machines sold, leased, licensed, and sublicensed.  SAB Recovery leased and licensed seven Sentinel EPE recyclers.  SAB Reclamation was to lease and license eight recyclers, according to its offering memorandum, but the SAB Reclamation partnership tax return for 1982 indicates that it leased and licensed only four recyclers.

For convenience, we refer to the series of transactions among PI, ECI Corp., F & G Corp., each of the Partnerships, FMEC Corp., and PI as the Partnership transactions.  In addition to

the Partnership transactions, a number of other limited partnerships entered into transactions similar to the Partnership transactions, also involving Sentinel EPE recyclers and Sentinel expanded polystyrene (EPS) recyclers. We refer to these collectively as the Plastics Recycling transactions.

### B. The Partnerships

SAB Recovery and SAB Reclamation are New York limited partnerships. SAB Recovery was formed in late 1981 and SAB Reclamation was formed in early 1982. Both partnerships were organized and promoted by Stuart Becker (Becker), a certified public accountant (C.P.A.) and the founder and principal owner of Stuart Becker & Co., P.C. (Becker Co.), an accounting firm that specialized in tax matters. Becker organized a total of six recycling partnerships (the SAB Recycling Partnerships). Two of the SAB Recycling Partnerships closed in late 1981, two closed in early 1982, and two more closed in late 1982.

The general partner of each of the SAB Recycling Partnerships, including SAB Recovery and SAB Reclamation, is SAB Management Ltd. (SAB Management). SAB Management is wholly owned by Scanbo Management Ltd. (Scanbo), which is wholly owned by Becker. Scanbo is an acronym for three of Becker's children: Scott, Andy, and Bonnie. The officers and directors of SAB Management and Scanbo are as follows: (1) Becker, president and director; (2) Noel Tucker (Tucker), vice president, treasurer, and director; and (3) Steven Leicht (Leicht), vice president,

secretary, and director.  During the years in issue, Tucker and Leicht also worked at Becker Co.  Tucker was vice president. Each owned approximately 5 to 7 percent of the stock of Becker Co.  SAB Management did not engage in any business before becoming involved with the SAB Recycling Partnerships. With respect to each of the Partnerships, a private placement memorandum was distributed to potential limited partners. Reports by F & G Corp.'s evaluators, Dr. Stanley M. Ulanoff (Ulanoff), a marketing consultant, and Dr. Samuel Z. Burstein (Burstein), a mathematics professor, were appended to the offering memoranda.  Ulanoff owns a 1.27-percent interest in Plymouth Equipment Associates and a 4.37-percent interest in Taylor Recycling Associates, partnerships that leased Sentinel recyclers.  Burstein owns a 2.605-percent interest in Empire Associates and a 5.82-percent interest in Jefferson Recycling Associates, also partnerships that leased Sentinel recyclers. Burstein also was a client and business associate of Elliot I. Miller (Miller), the corporate counsel to PI.

The offering memoranda for SAB Recovery and SAB Reclamation state that the general partner will receive fees from those partnerships in the respective amounts of $97,800 and $110,000. SAB Management received fees of approximately $500,000 as the general partner of the SAB Recycling Partnerships.  In addition, Becker Co. prepared the partnership returns and Schedules K-1 for all of the SAB Recycling Partnerships and received fees for those

services.

The offering memoranda for the Partnerships also allocate 7.5 percent of the proceeds from each offering to the payment of sales commissions and offeree representative fees. In addition, the offering memoranda provide that the respective general partners "may retain as additional compensation all amounts not paid as sales commissions or offeree representative fees." However, neither SAB Management nor Becker retained or received any sales commissions or offeree representative fees. Instead, after the closing of each SAB Recycling Partnership, Becker rebated to each investor whose investment was not subject to a sales commission or offeree representative fee an amount equal to 7.5 percent of such investor's original investment.

The offering memoranda list significant business and tax risk factors associated with investments in the Partnerships. Specifically, the offering memoranda state: (1) There is a substantial likelihood of audit by the Internal Revenue Service (IRS) and the purchase price paid by F & G Corp. to ECI Corp. probably will be challenged as being in excess of fair market value; (2) the Partnerships have no prior operating history; (3) the general partner has no prior experience in marketing recycling or similar equipment; (4) the limited partners have no control over the conduct of the Partnerships' business; (5) there is no established market for the Sentinel EPE recyclers; (6) there are no assurances that market prices for virgin resin will

remain at their current costs per pound or that the recycled pellets will be as marketable as virgin pellets; and (7) certain potential conflicts of interest exist.

C.  Stuart Becker and Steven Leicht

Becker does not have an engineering background, and he is not an expert in plastics materials or plastics recycling.  He received a B.S. degree in accounting from New York University in 1964 and an M.B.A. in taxation from New York University School of Business Administration in 1973.  He passed the certified public accountancy test in 1967 and was the winner of the gold medal, awarded for achieving the highest score on the examination for that year.  Since early 1966, Becker has practiced as an accountant exclusively in the tax area.  From 1964 until 1972 he worked for the accounting firm of Touche, Ross & Co., and in 1972 he joined the accounting firm of Richard A. Eisner & Co. as the partner in charge of the tax department.  In 1977, Becker founded Becker Co.

Becker had considerable experience involving tax shelter transactions before he organized the SAB Recycling Partnerships. He prepared opinions regarding tax shelters' economic and tax projections, advised individuals and companies with respect to investments in tax shelters, lectured extensively about tax shelter investments generally, and lectured and published with respect to leveraged tax shelters.  Becker described a leveraged tax shelter as "a transaction where [the ratio of] the effective

[tax] writeoff, which includes the value of the tax credit, * * * [to the amount invested] exceeds one to one."  Becker Co. specialized in tax-advantaged investments.  From 1980 to 1982, approximately 60 percent of the work done by Becker Co. involved tax-sheltered and private investments.  Becker has owned minority interests in general partners of numerous limited partnerships. Prior to organizing the SAB Recycling Partnerships, Becker owned 5 percent of the general partner of partnerships involved in approximately 14 transactions concerning river transportation (such as barges, tow boats, and grain elevators).

Although investment counseling was related to his firm's line of business, Becker did not consider himself in the business of providing investment advice.  Becker did not normally hire other professionals for consultation or advice.  In circumstances where he believed there was a need for outside advice, he would so advise the client.  Between 30 and 40 of Becker's clients invested in the Plastics Recycling partnerships.

Becker learned of the Plastics Recycling transactions when a prospective client presented him with an offering memorandum concerning the transactions in August or September 1981.  Becker reviewed the offering memorandum and spoke to Miller, one of the key figures in the transactions and an acquaintance of Becker's. Miller was a shareholder of F & G Corp. and, as noted, the corporate counsel to PI.  He also represented Robert Grant (Grant), the president and 100-percent owner of the stock of ECI

Corp., and some of Grant's clients.  Thereafter, Becker recommended the investment to the prospective client.  Although the prospective client did not invest in the Plastics Recycling transactions, Becker became interested in the proposal and organized the SAB Recycling Partnerships in order to make similar investments in Sentinel EPE recyclers conveniently available to appropriate clients.

In organizing the SAB Recycling Partnerships, Becker was not allowed to change the format of the transactions or the purchase, lease, or licensing prices of the Sentinel EPE recyclers.  He was allowed only to conduct a limited investigation of the proposed investments and choose whether or not to organize similar partnerships.  Becker relied heavily upon the offering materials and discussions with persons involved in the matter to evaluate the Plastics Recycling transactions.  He and two other members of Becker Co., Leicht and Tucker, investigated PI and visited its plant in Hyannis, Massachusetts, where they saw the Sentinel EPE recyclers.  Tucker did not testify.

During his investigation of the Plastics Recycling transactions, Becker did not hire any plastics, engineering, or technical experts, or recommend that his clients do so.  Becker discussed the transactions with Michael Canno (Canno) of the Equitable Bag Co., a manufacturer of paper and plastic bags.  Canno never saw the recyclers or the pellets and never wrote any reports assessing the equipment or the pellets.  In addition,

Becker retained a law firm, Rabin & Silverman, to assist him in organizing the SAB Recycling Partnerships.  See Spears v. Commissioner, T.C. Memo. 1996-341, to the effect that in employing the law firm, Becker sought particularly to protect himself against liability.

After the 1981 SAB Recycling Partnerships closed, Becker had an accountant sent to PI to confirm, by serial number, that as of December 31, 1981, the equipment that was leased to the 1981 SAB Recycling Partnerships was indeed available for use.  Becker arranged for this verification, independent of PI, because he understood that the investment tax and business energy credits would not be available if the qualifying property was not available for use.

Leicht also familiarized himself with the Plastics Recycling transactions.  Leicht has a B.A. degree in finance and accounting from Penn State University, a J.D. from SUNY Buffalo, and an LL.M. in taxation from New York University School of Law.  Leicht ran a mathematical check on the numbers contained in the offering materials for Becker, but he did not test the underlying assumptions upon which they were based.  He also visited PI in Hyannis and met with Miller and other insiders to the transactions.  Leicht never communicated an opinion as to the value of the recyclers other than what was presented in the offering memoranda.  He has no education or expertise in plastics materials or plastics recycling.

D.  Petitioners and Their Introduction to the Partnership
Transactions

Leon M. and Mary K. Jaroff resided in New York, New York,
when their petition was filed.  Leon M. Jaroff (petitioner)
earned degrees in electrical engineering and mathematics from the
University of Michigan in 1950.  He then moved to New York and
worked for an engineering magazine entitled Materials and
Methods.  Six months later he joined the staff of Life magazine.
Over approximately the next 8 years, petitioner was employed as a
researcher, then as a reporter in New York, and then as a bureau
correspondent for Life magazine.  While working in the Chicago
bureau in 1958, petitioner transferred to Time magazine (Time).
Several years later, he was promoted to Detroit bureau chief.  In
1964 petitioner was transferred to New York to write for the
business section of Time.  Subsequently, petitioner was employed
as a science writer for Time, the science editor for that
magazine, and then as a senior editor.  In 1980 Time, Inc.
started a science magazine, Discover, and petitioner was chosen
to be its first managing editor.  Petitioner was the managing
editor of the science magazine Discover for 4-1/2 years,
including the taxable years in issue.  Mary K. Jaroff was a sales
executive with Institutional Investor Systems during the taxable
years in issue.

Petitioner acquired a second-tier, 0.895928-percent interest
in SAB Recovery--through the partnership Resource Partners--for

$10,000 in 1981.[4]  As a result of his second-tier interest in SAB

Recovery, on their 1981 return petitioners claimed an operating

loss in the amount of $7,940 and investment tax and business

energy credits totaling $16,508.  Petitioners also claimed a $458

loss from SAB Recovery on their 1982 return.  In 1982, petitioner

acquired a second-tier, approximately 1.8-percent[5] interest in

SAB Reclamation--through the partnership V & L Equities--for

$10,000.[6]  As a result of his second-tier interest in SAB

---

[4]   The record does not directly disclose petitioner's percentage
interest in SAB Recovery.  Petitioner testified that he invested
$10,000, through Resource Partners, in SAB Recovery.  Attached to
the 1981 Partnership return of SAB Recovery is a Schedule K-1,
Partner's Share of Income, Credits, Deductions, etc, of an
individual who invested $10,000 in SAB Recovery.  For $10,000,
that limited partner acquired a 0.895928-percent interest in SAB
Recovery.  The amount of SAB Recovery's operating loss allocated
to that partner was $7,940, and the amount of basis allocated to
that partner was $82,537, which results in a combined investment
and business energy credit in the amount of $16,508.  ($82,537 x
10% = $8,254.  $8,254 x 2 = $16,508).  Those figures are
consistent with the loss and credits claimed by petitioners on
their 1981 income tax return.

[5]   The record does not directly disclose petitioner's
percentage interest in SAB Reclamation.  However, on its 1982
partnership return, SAB Reclamation reported a loss in the amount
of ($445,560), and a basis in the recyclers in the amount of
$4,650,668.  Petitioner was allocated a loss in the amount of
($8,021), and a basis in the recyclers in the amount of $83,712.
(($8,021)/($445,560) = 0.018002.  0.018 x $4,650,668 =
$83,712.02).

[6]   The record does not directly disclose the amount that
petitioner invested in V & L Equities for his second-tier
interest in SAB Reclamation.  However, the Schedule K-1 for V & L
Equities for 1982, attached to the SAB Reclamation partnership
return, shows that V & L Equities acquired a 9-percent interest
in SAB Reclamation for $50,000.  Petitioner had a 1.8-percent
second-tier interest in SAB Reclamation.  (0.018/0.09 = 0.2.  0.2
x $50,000 = $10,000).

Reclamation, on their 1982 return petitioners claimed an operating loss in the amount of $8,021[7] and investment tax and business energy credits in the amount of $16,742. Respondent disallowed the operating losses and credits related to SAB Recovery and claimed by petitioners on their 1981 return. With respect to petitioners' 1982 return, respondent disallowed $432 of the claimed $458 loss related to SAB Recovery; $2,475 of the claimed $8,021 loss related to SAB Reclamation; and $5,166 of the claimed $16,742 investment tax and business energy credits related to SAB Reclamation.

---

[7] The total operating loss claimed by petitioners on their 1982 return, from both SAB Reclamation and SAB Recovery, was $8,479. ($8,021 + $458 = $8,479).

Petitioner learned of the Plastics Recycling transactions from Noel Tucker of Becker Co. in 1981. Petitioner had been referred to Becker Co. in 1980 by Richard Snyder (Snyder), who at the time was the chief executive officer of Simon & Schuster, Inc. Petitioner and Snyder frequented the same fitness center and often talked while exercising. While "bemoaning * * * [his] financial status" on one such occasion, petitioner told Snyder that he "would love to increase" his income and that his "taxes [were] all screwed up". Snyder was a client of Becker Co. and he recommended the firm to petitioner. Petitioner contacted Becker, who "almost immediately turned * * * [him] over to Noel Tucker." Tucker serviced petitioner's account for approximately 1 year, and then it was turned over to a new member of the firm, Harry Shuffrin.

Tucker suggested the Plastics Recycling transactions to petitioner in 1981 and provided him with a copy of the SAB Recovery offering memorandum. Petitioner claims that he and his wife Mary devoted several evenings to the offering memorandum and "read it very carefully". The "possibility of being audited" and "a statement about there being some risk" concerned petitioner, and he raised these concerns with Tucker. According to petitioner, Tucker indicated that such warnings or caveats are routine and that the venture was sound. Petitioner recalled believing that Tucker had not visited PI but that Becker had visited PI several times, "often with experts in tow," and that

the Sentinel EPE recycler "was supposed to be better than * * * the state-of-the-art machines at that time."  Petitioner could not recall speaking to Becker about SAB Recovery.  After his initial introduction to Becker, and except for an occasional phone conversation with Leicht when Tucker was out of the office, during his first year as a client, petitioner recalled dealing only with Tucker.

Petitioner confirmed at trial that if he needs information, he knows how to get it.  He is familiar with a library and how to get information from various publications.  Petitioner knew how to locate plastics trade journals, but he did not consult any such magazines before investing in the Partnerships.  Petitioner explained that "one of the ways * * * [he] [gets] information best is to go to experts, generally in the [fields] of science and technology and medicine."  He did not, however, consult anyone outside of Becker Co. about the Partnerships.  Petitioner was never led to believe that Becker was an engineer or had any expertise in plastics.  He knew that Tucker was an accountant but assumed that Tucker was "relying upon the advice [of] experts that Stuart Becker had engaged."  Petitioner did not ask Tucker who those experts were.

Petitioners never made a profit in any year from their participation in SAB Recovery and SAB Reclamation.  Petitioner did not see a Sentinel EPE recycler prior to investing in the Partnerships.  He has no education or work experience in plastics

recycling or plastics materials.

OPINION

We have decided a large number of the Plastics Recycling group of cases.[8]  The majority of these cases, like the consolidated cases herein, raised issues regarding additions to tax for negligence and valuation overstatement.  We have found

_____

[8]     Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without published opinion 996 F.2d 1216 (6th Cir. 1993), concerned the substance of the partnership transaction and also the additions to tax.
    The following cases concerned the addition to tax for negligence, inter alia:  Gollin v. Commissioner, T.C. Memo. 1996-454; Grelsamer v. Commissioner, T.C. Memo. 1996-399; Zenkel v. Commissioner, T.C. Memo. 1996-398; Estate of Busch v. Commissioner, T.C. Memo. 1996-342; Spears v. Commissioner, T.C. Memo. 1996-341; Stone v. Commissioner, T.C. Memo. 1996-230; Reimann v. Commissioner, T.C. Memo. 1996-84; Bennett v. Commissioner, T.C. Memo. 1996-14; Atkind v. Commissioner, T.C. Memo. 1995-582; Triemstra v. Commissioner, T.C. Memo. 1995-581; Pace v. Commissioner, T.C. Memo. 1995-580; Dworkin v. Commissioner, T.C. Memo. 1995-533; Wilson v Commissioner, T.C. Memo. 1995-525; Avellini v. Commissioner, T.C. Memo. 1995-489; Paulson v. Commissioner, T.C. Memo. 1995-387; Zidanich v. Commissioner, T.C. Memo. 1995-382; Ramesh v. Commissioner, T.C. Memo. 1995-346; Reister v. Commissioner, T.C. Memo. 1995-305; Fralich v. Commissioner, T.C. Memo. 1995-257; Shapiro v. Commissioner, T.C. Memo. 1995-224; Pierce v. Commissioner, T.C. Memo. 1995-223; Fine v. Commissioner, T.C. Memo. 1995-222; Pearlman v. Commissioner, T.C. Memo. 1995-182; Kott v. Commissioner, T.C. Memo. 1995-181; Eisenberg v. Commissioner, T.C. Memo. 1995-180.
    Greene v. Commissioner, 88 T.C. 376 (1987), concerned the applicability of the safe-harbor leasing provisions of sec. 168(f)(8).  Trost v. Commissioner, 95 T.C. 560 (1990), concerned a jurisdictional issue.
    Farrell v. Commissioner, T.C. Memo. 1996-295; Baratelli v. Commissioner, T.C. Memo. 1994-484; Estate of Satin v. Commissioner, T.C. Memo. 1994-435; Fisher v. Commissioner, T.C. Memo. 1994-434; Foam Recycling Associates v. Commissioner, T.C. Memo. 1992-645; Madison Recycling Associates v. Commissioner, T.C. Memo. 1992-605, concerned other issues.

the taxpayers liable for such additions to tax in all but one of the opinions to date on these issues, although procedural rulings have involved many more favorable results for taxpayers.[9]

In Provizer v. Commissioner, T.C. Memo. 1992-177, a test case for the Plastics Recycling group of cases, this Court (1) found that each Sentinel EPE recycler had a fair market value not in excess of $50,000; (2) held that the transaction, which is almost identical to the Partnership transactions in these consolidated cases, was a sham because it lacked economic substance and a business purpose; (3) upheld the section 6659 addition to tax for valuation overstatement since the underpayment of taxes was directly related to the overstatement of the value of the Sentinel EPE recyclers; and (4) held that losses and credits claimed with respect to Clearwater were attributable to tax-motivated transactions within the meaning of

---

[9]    In Zidanich v. Commissioner, T.C. Memo. 1995-382, we held the taxpayers liable for the sec. 6659 addition to tax, but not liable for the negligence additions to tax under sec. 6653(a). As indicated in our opinion, the Zidanich case, and the Steinberg case consolidated with it for opinion, involved exceptional circumstances.
    In Estate of Satin v. Commissioner, supra, and Fisher v. Commissioner, supra, after the decision in Provizer v. Commissioner, supra, the taxpayers were allowed to elect to accept a beneficial settlement because of exceptional circumstances.  In Farrell v. Commissioner, supra, we rejected the taxpayers' claim to a similar belated settlement arrangement since the circumstances were different and the taxpayers previously had rejected settlement and elected to litigate the case.  See also Gollin v. Commissioner, supra; Grelsamer v. Commissioner, supra; Zenkel v. Commissioner, supra; Baratelli v. Commissioner, supra.

section 6621(c).  In reaching the conclusion that the transaction lacked economic substance and a business purpose, this Court relied heavily upon the overvaluation of the Sentinel EPE recyclers.

Although petitioners have not agreed to be bound by the Provizer opinion, they have stipulated that the investments in the Sentinel EPE recyclers in these consolidated cases are similar to the investment described in Provizer v. Commissioner, supra.  The underlying transactions in these consolidated cases, and the Sentinel EPE recyclers considered in these consolidated cases, are the same type of transaction and same type of machines considered in Provizer v. Commissioner, supra.

Based on the entire record in these consolidated cases, including the extensive stipulations, testimony of respondent's experts, and petitioner's testimony, we hold that each of the Partnership transactions herein was a sham and lacked economic substance.  In reaching this conclusion, we rely heavily upon the overvaluation of the Sentinel EPE recyclers.  Respondent is sustained on the question of the underlying deficiencies.  We note that petitioners have explicitly conceded this issue in the stipulations of settled issues filed shortly before trial.  The record plainly supports respondent's determinations regardless of such concession.  For a detailed discussion of the facts and the applicable law in a substantially identical case, see Provizer v. Commissioner, supra.

## A.  Section 6653(a)--Negligence

In two notices of deficiency, respondent determined that petitioners were liable for the additions to tax for negligence under section 6653(a)(1) and (2) for 1981 and 1982.[10] Petitioners have the burden of proving that respondent's determinations of these additions to tax are erroneous.  Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982).

Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations.  Section 6653(a)(2) imposes an addition to tax equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations.

Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would employ under the circumstances.  Neely v. Commissioner, 85 T.C. 934, 947 (1985).  The question is whether a particular taxpayer's actions in connection with the transactions were reasonable in light of his experience and the nature of the investment or business.  See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973).  When considering the negligence addition to tax, we evaluate the particular facts of each case, judging the relative

---

[10]    In the notice of deficiency for taxable year 1982, respondent referred to sec. 6653(a)(2) as sec. 6653(a)(1)(B).

sophistication of the taxpayers, as well as the manner in which they approached their investment. McPike v. Commissioner, T.C. Memo. 1996-46. Compare Spears v. Commissioner, T.C. Memo. 1996-341 with Zidanich v. Commissioner, T.C. Memo. 1995-382.

Petitioner maintains that he and his wife were reasonable in claiming deductions and credits with respect to the Partnerships. He claims that he (1) carefully read the SAB Recovery offering memorandum; (2) intended and reasonably expected to make an economic profit from the Partnerships in light of the so-called oil crisis in the United States in 1981 and 1982; and (3) reasonably relied upon Tucker as a qualified adviser on this matter.

### 1. The Private Offering Memoranda

Petitioner testified that he relied in part upon the SAB Recovery offering memorandum. He claimed that he and his wife spent several consecutive evenings carefully reading it. Petitioner did not indicate how much time, if any, he spent reviewing the SAB Reclamation offering memorandum.

Each of the offering memoranda highlighted a number of tax risk factors and 12 business risk factors, including the following: (1) The Partnerships had no operating history; (2) management of the Partnerships' business was dependent upon the general partner, who had no experience in marketing recycling equipment and who was required to devote only such time to the Partnerships as such general partner deemed necessary; (3) the

limited partners had no right to take part in, or interfere in any manner with, the management or conduct of the business of the Partnerships; (4) there was no established market for the Sentinel recyclers; and (5) although competitors were purportedly not marketing comparable equipment, and the Sentinel recyclers purportedly involved "carefully guarded trade secrets," PI did "not intend to apply for a patent for protection against appropriation and use by others."

In these consolidated cases, the projected tax benefits in the SAB Recovery and SAB Reclamation offering memoranda exceeded petitioner's investments. According to the offering memoranda, for each $50,000 investor, the projected first-year tax benefits were investment tax credits in the amounts of $82,639 and $83,712, respectively, plus deductions in the amounts of $40,003 and $40,234, respectively. As a result of petitioner's second-tier, $10,000 investment in SAB Recovery, on their 1981 return petitioners claimed an operating loss in the amount of $7,940 and investment tax and business energy credits totaling $16,508; and on their 1982 return they claimed an operating loss in the amount of $458. For petitioner's $10,000, second-tier investment in SAB Reclamation in 1982, petitioners claimed an operating loss in the amount of $8,021 and investment tax and business energy credits in the amount of $16,742.

Petitioner estimated that at the time he invested in the Partnerships, he was working 70 hours a week at Discover

magazine, and "just the thought of pursuing any other kind of activity was just out of the question for * * * [him]." Petitioner testified that he invested in the Partnerships to obtain an additional source of income to help offset current and future tuition bills of his children, as well as alimony payments to his former wife. According to petitioner, the long-term projected royalty payments, and not the tax benefits, primarily induced him to invest in the Partnerships. Petitioners claimed three children as dependents on their 1981 and 1982 returns. They deducted alimony paid--in the amount of $3,600--only on their 1981 return. Petitioners reported income from wages, interest, and dividends in the amount of $154,209 in 1981, and in the amount of $182,556 in 1982. Petitioner testified that, after purportedly reading the SAB Recovery offering memorandum over several nights, his primary concern was the risk of being audited.

Petitioner testified that the tax benefits flowing from the Partnerships were explained to him, and that he understood they would exceed his cash invested. He was not so well informed or concerned about the business aspects of the Partnerships, however. Petitioner testified that he thought that the Sentinel EPE recycler had an advantage over its competitors because "it was supposed to be better * * * than the state-of-the-art machines at that time," but the offering memoranda warned that PI was not patenting the machine to protect against appropriation

and use by others.  The financial structure of the Partnerships was not clear to petitioner from the offering memoranda, and at trial he could not recall that the offering memoranda warned that there was no established market for the recyclers.  This point was discussed in a section of the offering memorandum entitled, "No Established Market for the Sentinel Recyclers".  The offering memoranda explained that "There is presently no established market for leasing or licensing the use of the Sentinel Recyclers or comparable recycling equipment", and that "there can be no assurance that the Sentinel Recyclers will be placed * * * to any significant extent".  Notwithstanding petitioner's purported economic profit motive for investing in the Partnerships, the record in these consolidated cases indicates that petitioners did not carefully read the offering memoranda, did not give due consideration to all of the information set out therein, and ultimately did not place a great deal of reliance, if any, on the representations therein.

The direct reductions in petitioners' Federal income taxes, from the investment tax credits alone, ranged from 165 percent to 167 percent of their cash investments, without consideration of any rebated commissions or advance royalty payments.  Therefore, after adjustments of withholding, estimated tax, or final payment, like the taxpayers in Provizer v. Commissioner, T.C. Memo. 1992-177, "except for a few weeks at the beginning, petitioners never had any money in the * * * [Partnership

transactions]."  In view of the disproportionately large tax benefits claimed on petitioners' Federal income tax returns, relative to the dollar amounts invested, further investigation of the Partnership transactions clearly was required.  A careful consideration of the materials in the offering memoranda in these cases, especially the discussions of high writeoffs and risk of audit, should have alerted a prudent and reasonable investor to the questionable nature of the promised deductions and credits. See Collins v. Commissioner, 857 F.2d 1383, 1386 (9th Cir. 1988), affg. Dister v. Commissioner, T.C. Memo. 1987-217; Sacks v. Commissioner, T.C. Memo. 1994-217, affd. 82 F.3d 918 (9th Cir. 1996).  A reasonably prudent person would not conclude without substantial investigation that the Government was providing tax benefits so disproportionate to the taxpayers' investment of their own capital.

Petitioners' reliance upon the Court of Appeals for the Ninth Circuit's partial reversal of our decision in Osterhout v. Commissioner, T.C. Memo. 1993-251, affd. in part and revd. in part without published opinion sub nom. Balboa Energy Fund 1981 v. Commissioner, 85 F.3d 634 (9th Cir. 1996), is misplaced.  In Osterhout, we found that certain oil and gas partnerships were not engaged in a trade or business and sustained the Commissioner's imposition of the negligence additions to tax with

respect to one of the partners therein.[11]  The Court of Appeals for the Ninth Circuit reversed our imposition of the negligence additions to tax.  Petitioners point out that the taxpayer in that case relied in part upon a tax opinion contained in the offering materials.

---

[11]    Osterhout v. Commissioner, T.C. Memo. 1993-251, affd. in part and revd. in part without published opinion sub nom. Balboa Energy Fund 1981 v. Commissioner, 85 F.3d 634 (9th Cir. 1996), involved a group of consolidated cases.  The parties therein agreed to be bound by the Court's opinion regarding the application of the additions to tax under sec. 6653(a), inter alia.  Accordingly, although the Court's analysis focused on one taxpayer, the additions to tax were sustained with respect to all of the taxpayers.

In the consolidated cases before us, however, petitioner's testimony indicates that he and his wife did not carefully read the offering memoranda and therefore did not place a great deal of reliance, if any, upon the tax opinion letter attached thereto.  Moreover, the offering memoranda for the Partnerships herein warned prospective investors that the accompanying tax opinion letters were not in final form and were prepared for the general partner, and that prospective investors should consult their own professional advisers with respect to the tax benefits and tax risks associated with the Partnerships.  The tax opinion letters accompanying the SAB Recovery and SAB Reclamation offering memoranda were addressed solely to the general partner and began with the following opening disclaimer:

> This opinion is provided to <u>you for your individual guidance</u>.  <u>We expect that prospective investors will rely upon their own professional advisors</u> with respect to all tax issues arising in connection with an investment in the Partnership and the operations thereof.  We recognize that you intend to include this letter with your offering materials and we have consented to that with the understanding that <u>the purpose in distributing it is</u> to assist your offerees' and their tax advisors in making their own analysis and <u>not to permit any prospective investor to rely upon our advice in this matter</u>.  [Emphasis added.]

Accordingly, the tax opinion letters expressly indicate that prospective investors such as petitioners were not to rely upon the tax opinion letter.  See <u>Collins v. Commissioner</u>, <u>supra</u>.  The limited, technical opinion of tax counsel expressed in these letters was not designed as advice upon which taxpayers might

rely, and the opinion of counsel itself so states.

2.  The So-Called Oil Crisis

Petitioner contends that he reasonably expected to make an economic profit from the Partnership transactions because plastic is an oil derivative and the United States was experiencing a so-called oil crisis during the years 1981 and 1982.  Based upon our review of the record, we find petitioner's contention unconvincing, regardless of the so-called oil crisis.  Moreover, testimony by one of respondent's experts establishes that the oil pricing changes during the late 1970's and early 1980's did not justify petitioners' claiming excessive investment credits and purported losses based on vastly exaggerated valuations of recycling machinery.

By 1981 petitioner had approximately 30 years' experience as, variously, a reporter, bureau correspondent, and editor for the magazines Life, Time, and Discover.  He confirmed at trial that if he needs information, he knows how to get it.  In addition to utilizing libraries and varying publications, petitioner noted that "one of the ways that * * * [he] [gets] information best is to go to experts, * * * generally in the [fields] of science and technology and medicine."  Despite his research and reporting experience, and the resources available to him at Time, Inc., petitioner did not educate himself in, or personally investigate, the plastics recycling transactions; nor

did he consult anyone outside of Becker Co.  In addition, petitioner and his wife did not carefully read the SAB Recovery offering memorandum or seriously attempt to resolve the numerous caveats and warnings therein.  We are not convinced that petitioner gave sufficient consideration to the business aspects of the Partnerships to demonstrate that he really intended and reasonably expected to make an economic profit from the transactions, regardless of the so-called oil crisis.

Moreover, petitioners did not explain how the so-called oil crisis provided a reasonable basis for them to invest in the Partnerships and claim the associated tax deductions and credits. The offering materials warned that there could be no assurances that prices for new resin pellets would remain at their then-current level.  One of respondent's experts, Steven Grossman, explained that the price of plastics materials is not directly proportional to the price of oil.  In his report, he stated that less than 10 percent of crude oil is utilized for making plastics materials and that studies have shown that "a 300% increase in crude oil prices results in only a 30 to 40% increase in the cost of plastics products."  Furthermore, during 1980 and 1981, in addition to the media coverage of the so-called oil crisis, there was "extensive continuing press coverage of questionable tax shelter plans."  Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982).

Petitioners' reliance on Krause v. Commissioner, 99 T.C. 132

(1992), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994), is misplaced. The facts in Krause v. Commissioner, supra, are distinctly different from the facts of these cases. In the Krause case, the taxpayers invested in limited partnerships whose investment objectives concerned enhanced oil recovery (EOR) technology. The Krause opinion states that during the late 1970's and early 1980's, the Federal Government adopted specific programs to aid research and development of EOR technology. Id. at 135-136. In holding that the taxpayers in the Krause case were not liable for the negligence additions to tax, this Court noted that one of the Government's expert witnesses acknowledged that "investors may have been significantly and reasonably influenced by the energy price hysteria that existed in the late 1970s and early 1980s to invest in EOR technology." Id. at 177. In the present cases, however, as explained by respondent's expert Steven Grossman, the price of plastics materials was not directly proportional to the price of oil, and there is no persuasive evidence that the so-called oil crisis had a substantial bearing on petitioner's decision to invest. While EOR was, according to our Krause opinion, in the forefront of national policy and the media during the late 1970's and 1980's, there is no showing in these records that the so-called energy crisis would provide a reasonable basis for petitioner's investing in recycling of polyethylene, particularly in the machinery here in question.

In addition, the taxpayers in the <u>Krause</u> case were experienced in or investigated the oil industry and EOR technology specifically. One of the taxpayers in <u>Krause v. Commissioner</u>, <u>supra</u>, undertook significant investigation of the proposed investment including researching EOR technology. The other taxpayer was a geological and mining engineer whose work included research of oil recovery methods and who hired an independent geologic engineer to review the offering materials. <u>Id.</u> at 166. In the present cases, petitioners were not experienced or educated in plastics recycling. Petitioner did not independently investigate the Sentinel recyclers or hire an expert in plastics to evaluate the Partnership transactions. We consider petitioners' arguments with respect to the <u>Krause</u> case inapplicable.

### 3. Petitioners' Purported Reliance on a Tax Adviser

Petitioner maintains that he reasonably relied upon the advice of a qualified adviser, Tucker, and that he relied on various representations allegedly made by Tucker about what Becker had done.

The concept of negligence and the argument of reliance on an expert are highly fact intensive. Petitioner is well educated; he earned degrees in electrical engineering and mathematics from the University of Michigan. For approximately 30 years, he worked variously as a reporter, bureau correspondent, editor, senior editor, and managing editor for Life magazine, Time

magazine, and Discover magazine.  This experienced business and science journalist claims that he relied upon an accountant to investigate the tax law and the underlying business circumstances of a proposed investment, the success of which depended upon a purportedly technologically unique machine.  Becker, who is experienced in tax matters, explains that he made an investigation within the limits of his resources and abilities and that he and Tucker fully disclosed what he had done.  For reasons set forth below, we believe that petitioner did not reasonably rely upon Tucker, and ultimately Becker, with respect to valuation problems requiring expertise in engineering and plastics technology.

### a.  The Circumstances Under Which a Taxpayer May Avoid Liability Under Section 6653(a)(1) and (2) Because of Reasonable Reliance on Competent and Fully Informed Professional Advice

A taxpayer may avoid liability for the additions to tax under section 6653(a)(1) and (2) if he or she reasonably relied on competent professional advice.  United States v. Boyle, 469 U.S. 241, 250-251 (1985); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).  Reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered.  Freytag v. Commissioner, supra.  For reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the taxpayer must show that the professional

had the expertise and knowledge of the pertinent facts to provide informed advice on the subject matter. David v. Commissioner, 43 F.3d 788, 789-790 (2d Cir. 1995), affg. T.C. Memo. 1993-621; Goldman v. Commissioner, 39 F.3d 402 (2d Cir. 1994), affg. T.C. Memo. 1993-480; Freytag v. Commissioner, supra; Sacks v. Commissioner, T.C. Memo. 1994-217, affd. 82 F.3d 918 (9th Cir. 1996); Kozlowski v. Commissioner, T.C. Memo. 1993-430, affd. without published opinion 70 F.3d 1279 (9th Cir. 1995); see also Stone v. Commissioner, T.C. Memo. 1996-230; Reimann v. Commissioner, T.C. Memo. 1996-84.

Reliance on representations by insiders, promoters, or offering materials has been held an inadequate defense to negligence. Goldman v. Commissioner, supra; Pasternak v. Commissioner, 990 F.2d 893 (6th Cir. 1993), affg. Donahue v. Commissioner, T.C. Memo. 1991-181; LaVerne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991); Marine v. Commissioner, 92 T.C. 958, 992-993 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991); McCrary v. Commissioner, 92 T.C. 827, 850 (1989); Rybak v. Commissioner, 91 T.C. 524, 565 (1988). Pleas of reliance have been rejected when neither the taxpayer nor the advisers purportedly relied upon by the taxpayer knew anything about the nontax business aspects of the contemplated venture. David v. Commissioner,

supra; <u>Goldman v. Commissioner</u>, <u>supra</u>; <u>Freytag v. Commissioner</u>, <u>supra</u>; <u>Beck v. Commissioner</u>, 85 T.C. 557 (1985); <u>Lax v. Commissioner</u>, T.C. Memo. 1994-329, affd. without published opinion 72 F.3d 123 (3d Cir. 1995); <u>Sacks v. Commissioner</u>, <u>supra</u>; <u>Steerman v. Commissioner</u>, T.C. Memo. 1993-447; <u>Rogers v. Commissioner</u>, T.C. Memo. 1990-619; see also the Plastics Recycling cases cited <u>supra</u> note 8.

In the instant consolidated cases, petitioner maintains that he reasonably relied upon Tucker as a qualified adviser on this matter. Although petitioner testified that he did not discuss the Plastics Recycling transactions with Becker, and he does not argue that he relied on Becker, the substance of petitioner's testimony is that he relied upon Tucker's representations about what Becker had done to investigate the Plastics Recycling transactions. Tucker did not testify at trial; Becker did.

### b. Becker and Tucker

Becker had no education, special qualifications, or professional skills in plastics engineering, plastics recycling, or plastics materials. In evaluating the Plastics Recycling transactions and organizing the SAB Recycling Partnerships, Becker supposedly relied upon: (1) The offering materials; (2) a tour of the PI facility in Hyannis; (3) discussions with insiders to the transactions; (4) Canno; and (5) his investigation of the reputation and background of PI and persons involved in the transactions.

Despite his lack of knowledge regarding the product, the target market, and the technical aspects at the heart of the Plastics Recycling transactions, Becker did not hire an expert in plastics materials or plastics recycling, or recommend that his clients do so. The only independent person having any connection with the plastics industry with whom Becker spoke was Canno. Canno was a client of Becker Co. and was a part owner and the production manager of Equitable Bag Co., a manufacturer of paper and plastic bags. Becker spoke to Canno about the recyclers and PI, but did not hire or pay him for any advice. Canno did not visit the PI plant in Hyannis, see or test a Sentinel EPE recycler, or see or test any of the output from a Sentinel EPE recycler or the recycled resin pellets after they were further processed by PI. According to Becker, Canno endorsed the Partnership transactions after reviewing the offering materials. Asked at trial if Canno had done any type of comparables analysis, Becker replied: "I don't know what Mr. Canno did."

Becker visited the PI plant in Hyannis, toured the facility, viewed a Sentinel EPE recycler in operation, and saw products that were produced from recycled plastic. Becker claims that he was told by PI personnel that the recycler was unique and that it was the only machine of its type. In fact, the Sentinel EPE recycler was not unique; instead, several machines capable of densifying low density materials were already on the market. Other plastics recycling machines available during 1981 and 1982

ranged in price from $20,000 to $200,000, including the Foremost Densilator, Nelmor/Weiss Densification System (Regenolux), Buss-Condux Plastcompactor, and Cumberland Granulator. See Provizer v. Commissioner, T.C. Memo. 1992-177.

Becker was also told that PI had put an enormous amount of research and development--10 to 12 years' worth--into the creation and production of the Sentinel EPE recycler. When he asked to see the cost records for some kind of independent verification, however, his request was denied. Becker was informed that such information was proprietary and secret, and that he would just have to take PI's representations as true. Although PI claimed that all of its information was a trade secret, and that it never obtained patents on any of its machines, PI had in fact obtained numerous patents prior to the recycling transactions and had also applied for a trademark for the Sentinel recyclers. Becker decided to accept PI's representations after speaking with Miller (the corporate counsel to PI), Canno (who had never been to PI's plant or seen a Sentinel EPE recycler), and a surrogate judge from Rhode Island who did business in the Boston/Cape Cod area (and who had no expertise in engineering or plastics materials). Becker testified that he was allowed to see PI's internal accounting controls regarding the allocation of royalty payments and PI's recordkeeping system in general. In Provizer v. Commissioner, supra, this Court found that "PI had no cost accounting system or

records."

Becker confirmed at trial that he relied on the offering materials and discussions with PI personnel to establish the value and purported uniqueness of the recyclers. Becker testified that he relied upon the reports of Ulanoff and Burstein contained in the offering materials, despite the fact that: (1) Ulanoff's report did not contain any hard data to support his opinion; (2) Ulanoff was not an economics or plastics expert; (3) Becker did not know whether Burstein was an engineer; and (4) Burstein was a client of Miller's and was not an independent expert. In addition, Ulanoff and Burstein each owned an interest in more than one partnership that owned Sentinel recyclers as part of the Plastics Recycling Program.

Becker explained at trial that in the course of his practice when evaluating prospective investments for clients, he focuses on the economics of the transaction and investigates whether there is a need or market for the product or service. With respect to the Partnership transactions, the records indicate that Becker overlooked several red flags regarding the economic viability and market for the Sentinel EPE recyclers. The offering memoranda for the Partnership transactions warned that there was no established market for the Sentinel EPE recyclers. Becker never saw any marketing plans for selling the pellets or leasing the recyclers. He accepted representations by PI personnel that they would be marketing the recyclers to clients

and that there was a sufficient base of end-users for the machines; yet he never saw PI's client list.  At the time of the closing of the Partnerships, Becker did not know who the end-users were or whether there were any end-users actually committed to the transaction.

Becker purportedly checked the price of the pellets by reading trade journals of the plastics industry.  However, he did not use those same journals to investigate the recyclers' purported value or to see whether there were any advertisements for comparable machines.  In concluding that the Partnerships would be economically profitable, Becker made two assumptions that he concedes were unsupported by any hard data:  (1) That there was a market for the pellets; and (2) that market demand for them would increase.

Becker had a financial interest in SAB Recovery, SAB Reclamation, and the SAB Recycling Partnerships, generally.  He received fees in excess of $500,000 with respect to the SAB Recycling Partnerships, and more than $200,000 of those fees was derived from SAB Recovery and SAB Reclamation.  Becker also received fees for investment advice from some individual investors.  In addition, Becker Co. received fees from the SAB Recycling Partnerships for preparing their partnership returns.  As Becker himself testified, potential investors could not have read the offering materials and remained ignorant of the financial benefits accruing to him.

Petitioner's recollection of Becker's investigation, as purportedly told to him by Tucker, is inconsistent with Becker's testimony. According to petitioner, he understood from Tucker that Tucker had not visited the PI plant in Hyannis, but that "Becker had gone many times" and "had taken experts in plastics and manufacturing along with him." In contrast, Becker testified that he visited PI just "one or two" times and that Tucker visited PI once or twice. Becker was "quite certain" that Tucker accompanied him on one of his visits to PI, although he did not indicate when that visit occurred. As for taking along experts in plastics and manufacturing, Becker testified that he did not hire any independent experts other than counsel to represent him as general partner, and that he relied on PI for the value and uniqueness of the Sentinel recycler.

Becker and petitioner also have differing recollections regarding whether the two of them discussed the Plastics Recycling transactions. According to petitioner, after he first contacted Becker, Becker took him on as a client and "almost immediately turned * * * [him] over to Noel Tucker." Petitioner testified that thereafter, except for an occasional phone conversation with Leicht, his dealings "were entirely with Noel Tucker" until his account was turned over to Shuffrin. In contrast, Becker testified that he spoke to petitioner "more than once", although to the best of his recollection only once prior to the closing of SAB Recovery. Becker testified that "Mr.

Jaroff called me after discussing the transaction with Mr. Tucker, and asked me * * * to confirm the information that Noel [Tucker] had given him".  As Becker recalled, he and petitioner discussed the Plastics Recycling transactions for approximately 15 to 30 minutes in Tucker's office.  Asked if his testimony would be different if petitioner were to testify that he had met Becker only once, and that he had spoken only to Tucker and Shuffrin about the Partnerships, Becker replied:  "No.  * * * [My testimony] wouldn't be different."  Asked if he had a definite recollection of talking to petitioner, Becker replied:  "I recall talking to him in Tucker's office."

With respect to what he told petitioner, Becker's testimony is inconsistent.  On direct examination, Becker testified that he confirmed to petitioner that he and his associates at Becker Co. had visited PI, observed the recyclers, and done everything they thought appropriate.  Becker testified that "I just confirmed that we believed that we had done an appropriate level of due diligence."  On cross-examination, Becker modified his earlier testimony and said:

> I [told Jaroff] that I had done a high degree of investigation, review, and analysis, as opposed to saying I did due diligence * * *.  I had told him about some of the things that I had done, some of [the] other things that Mr. Tucker had done, and we also had discussed the investment with Jaroff.  I had indicated to him that, based upon my knowledge of his financial circumstance, he could afford the risk.  That was basically the substance of my discussions with Mr. Jaroff.

Becker testified that he was very careful not to mislead any of his clients regarding the particulars of his investigation. As he put it: "I don't recall saying to a client I did due diligence * * * [Rather,] I told * * * [my clients] precisely what I had done to investigate or analyze the transaction. I didn't just say I did due diligence, and leave it open for them to define what I might or might not have done."

The record shows that petitioner did not carefully read the offering memoranda; did not independently research the Plastics Recycling transactions; and did not consult any experts in plastics materials or plastics recycling. Petitioner claims that he relied on Tucker, and particularly relied on Tucker's purported representations about what Becker had done to investigate the Plastics Recycling transactions. As petitioner recalls them, however, Tucker's purported representations contradict Becker's testimony regarding what he had done. We find petitioner's recollection of Tucker's representations to be unreliable, and his failure to call Tucker to testify gives rise to the inference that such testimony would not have been favorable to petitioners. Mecom v. Commissioner, 101 T.C. 374, 386 (1993), affd. without published opinion 40 F.3d 385 (5th Cir. 1994); Pollack v. Commissioner, 47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); Sacks v. Commissioner, T.C. Memo. 1994-217. We are

not required to accept petitioner's self-serving testimony as true, particularly when inconsistent and contradicted by other evidence. Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Snyder v. Commissioner, T.C. Memo. 1995-285; Sacks v. Commissioner, supra.

Petitioner does not allege that Tucker misled or deceived him. As a member of Becker Co., Tucker was privy to the particulars of Becker's investigation. Certainly he knew that Becker did not take any experts with him to PI, especially considering Becker's testimony that Tucker was with him on one such occasion. To the extent that Tucker related the particulars of Becker's investigation to petitioner, we have no reason to doubt that his representations were accurate and forthright. In addition, Becker's testimony convinces us that petitioner discussed the Plastics Recycling transactions with Becker and that Becker supplemented the representations made by Tucker, so that petitioner knew "precisely what * * * [Becker] had done to investigate or analyze the transaction." Accordingly, we find that petitioner was fully apprised of the particulars of Becker Co.'s investigation, consistent with the facts as we have found them.

We hold that petitioner's purported reliance on Tucker, and indirectly on Becker, was not reasonable, not in good faith, nor

based upon full disclosure. The purported value of the Sentinel EPE recycler generated the deductions and credits in these cases, and that circumstance was reflected in the offering memoranda. Petitioner testified that the tax benefits were explained to him and that he recognized that the Sentinel recycler was "very expensive." Certainly Tucker and Becker recognized the nature of the tax benefits and, given petitioner's education and professional experience, he should have recognized it as well. Yet neither petitioner, nor Tucker, nor Becker verified the purported value of the Sentinel EPE recycler. Petitioner ultimately relied on Becker, and Becker confirmed at trial that he relied on PI for the value of the Sentinel EPE recyclers.

In the end, Tucker, Becker, and petitioner relied on PI personnel for the value of the Sentinel EPE recyclers and the economic viability of the Partnership transactions. See Vojticek v. Commissioner, T.C. Memo. 1995-444, to the effect that advice from such persons "is better classified as sales promotion." Tucker and Becker did not have any education, special qualifications, or professional skills in plastics materials or plastics recycling. A taxpayer may rely upon his adviser's expertise (in these cases accounting and tax advice), but it is not reasonable or prudent to rely upon a tax adviser regarding matters outside of his field of expertise or with respect to facts that he does not verify. See David v. Commissioner, 43 F.3d at 789-790; Goldman v. Commissioner, 39 F.3d at 408; Skeen

v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affg. Patin v. Commissioner, 88 T.C. 1086 (1987); Lax v. Commissioner, T.C. Memo. 1994-329; Sacks v. Commissioner, supra; Rogers v. Commissioner, T.C. Memo. 1990-619; see also Gollin v. Commissioner, T.C. Memo. 1996-454; Grelsamer v. Commissioner, T.C. Memo. 1996-399; Zenkel v. Commissioner, T.C. Memo. 1996-398; Estate of Busch v. Commissioner, T.C. Memo. 1996-342; Spears v. Commissioner, T.C. Memo. 1996-341, with respect to Becker's advice in Plastics Recycling cases.

### 4. Miscellaneous

Petitioners stipulated that the fair market value of a Sentinel EPE recycler in 1981 was not in excess of $50,000. Notwithstanding this concession, petitioners contend that they were reasonable in claiming credits on their Federal income tax returns based upon each recycler having a value of $1,162,666. In support of this position, petitioners submitted into evidence preliminary reports prepared for respondent by Ernest D. Carmagnola (Carmagnola), the president of Professional Plastic Associates. Carmagnola had been retained by the IRS in 1984 to evaluate the Sentinel EPE and EPS recyclers in light of what he described as "the fantastic values placed on the * * * [recyclers] by the owners." Based on limited information available to him at that time, Carmagnola preliminarily estimated that the value of the Sentinel EPE recycler was $250,000. However, after additional information became available to him,

Carmagnola concluded in a signed affidavit, dated March 16, 1993, that the machines actually had a fair market value of not more than $50,000 each in the fall of 1981 and 1982.

We accord no weight to the Carmagnola reports submitted by petitioners. The projected valuations therein were based on inadequate information, research, and investigation, and were subsequently rejected and discredited by their author. In one preliminary report, Carmagnola states that he has "a serious concern of actual profit" of a Sentinel EPE recycler and that to determine whether the machines actually could be profitable, he required additional information from PI. Carmagnola also indicates that in preparing the report, he did not have information available concerning research and development costs of the machines and that he estimated those costs in his valuations of the machines.

Respondent rejected the Carmagnola reports and considered them unsatisfactory for any purpose, and there is no indication in the records that respondent used them as a basis for any determinations in the notices of deficiency. Even so, counsel for petitioners obtained copies of these reports and urge that they support the reasonableness of the values reported on petitioners' returns. Not surprisingly, said counsel did not call Carmagnola to testify in these cases, but preferred instead to rely solely upon his preliminary ill-founded valuation estimates. (Carmagnola has not been called to testify in any of

the Plastics Recycling cases before us.)  The Carmagnola reports were a part of the record considered by this Court and reviewed by the Sixth Circuit Court of Appeals in Provizer v. Commissioner, T.C. Memo. 1992-177, where we held the taxpayers negligent.  Consistent therewith, we find in these consolidated cases, as we have found previously, that the reports prepared by Carmagnola are unreliable and of no consequence.  Petitioners are not relieved of the negligence additions to tax based on the preliminary reports prepared by Carmagnola.

Petitioners cite a number of cases in support of their position, but primarily rely on Durrett v. Commissioner, 71 F.3d 515 (5th Cir. 1996), affg. in part and revg. in part T.C. Memo. 1994-179; Chamberlain v. Commissioner, 66 F.3d 729 (5th Cir. 1995), affg. in part and revg. in part T.C. Memo. 1994-228; Wright v. Commissioner, T.C. Memo. 1994-288; Wood v. Commissioner, T.C. Memo. 1991-205; Davis v. Commissioner, T.C. Memo. 1989-607; and Mollen v. United States, 72 AFTR 2d 93-6443, 93-2 USTC par. 50,585 (D. Ariz. 1993).

This Court dismissed the negligence additions to tax in the Wright, Wood, and Davis cases for reasons inapposite to the facts herein.  In the Wright case, the taxpayers were unsophisticated investors with little or no experience in financial matters; nothing in their lives had given them the experience they needed to manage their money or to recognize the importance or meaning of the warning signs inherent in the investment at issue.  In

Wood, a group of consolidated cases, all of the taxpayers had profit objectives, the transactions were not sham transactions, and one pair of taxpayers inspected the equipment at issue. In the Davis case, the taxpayers reasonably relied upon a "trusted and long-term adviser" who was independent of the investment venture, and the offering materials reviewed by the taxpayers did not reflect that the principals in the venture lacked experience in the pertinent line of business.

Unlike the taxpayer in Wright, as a former business reporter for Time, petitioner plainly had the experience and education necessary to recognize the importance or meaning of the warning signs inherent in the Partnership transactions. In contrast to the Wood case, the Partnership transactions are shams lacking economic substance; we are not convinced that petitioner had an honest objective of making an economic profit; and he did not inspect the recyclers. Unlike the circumstances of the Davis case, Tucker and Becker were not long-term advisers of petitioner; Becker was not independent of the SAB Recycling Partnerships; and the offering memoranda warned that the general partner had no prior experience in marketing recycling or similar equipment. Accordingly, petitioners' reliance on the Wright, Wood, and Davis cases is misplaced.

In Mollen v. United States, supra, the taxpayer was a medical doctor who specialized in diabetes and who, on behalf of the Arizona Medical Association, led a continuing medical

education (CME) accreditation program for local hospitals.  The underlying tax matter involved the taxpayer's investment in Diabetics CME Group, Ltd., a limited partnership that invested in the production, marketing, and distribution of medical educational video tapes.  The District Court found that the taxpayer's personal expertise and insight in the underlying investment gave him reason to believe it would be economically profitable.  Although the taxpayer was not experienced in business or tax matters, he did consult with an accountant and a tax lawyer regarding those matters.  Moreover, the District Court noted that the propriety of the taxpayer's disallowed deduction therein was "reasonably debatable."  Id. at 93-6447, 93-2 USTC par. 50,585, at 89,895; see Zfass v. Commissioner, T.C. Memo. 1996-167.

Petitioner and Becker have no formal education, expertise, or experience in plastics recycling.  Tucker never represented that he was expert in plastics recycling, and petitioner had no reason to believe otherwise.  There is no showing in the record that petitioner, Tucker, or Becker had any personal insight or industry know-how in plastics recycling that would reasonably lead them to believe that the Plastics Recycling transactions would be economically profitable.  Becker purportedly discussed the transactions with Canno, who apparently was familiar with the plastics industry, but Canno was not hired by Becker to investigate PI and the Sentinel EPE recycler, never saw a

Sentinel EPE recycler, and never prepared any kind of formal, written analysis of the venture. In the end, Becker Co. and petitioner relied upon representations by insiders to the Plastics Recycling transactions, and neither Becker Co. nor petitioner hired any independent experts in the field of plastic materials or plastics recycling. Accordingly, we consider petitioners' arguments with respect to the Mollen case inapplicable under the circumstances of these consolidated cases.

Petitioners also rely on two recent decisions by the Court of Appeals for the Fifth Circuit that reversed this Court's imposition of the negligence additions to tax in a pair of non-plastics recycling cases: Durrett v. Commissioner, 71 F.3d 515 (5th Cir. 1996), affg. in part and revg. in part T.C. Memo. 1994-179 and Chamberlain v. Commissioner, 66 F.3d 729 (5th Cir. 1995). The taxpayers in the Durrett and Chamberlain cases were among thousands who invested in the First Western tax shelter program involving alleged straddle transactions of forward contracts. In the Durrett and Chamberlain cases, the Court of Appeals for the Fifth Circuit concluded that the taxpayers reasonably relied upon professional advice concerning tax matters. In other First Western cases, however, the Courts of Appeals have affirmed decisions of the Tax Court imposing negligence additions to tax. See Foulds v. Commissioner, T.C. Memo. 1994-489 (the well-educated taxpayer failed to establish the substance of advice, and the purported adviser lacked tax expertise), affd. without

published opinion 94 F.3d 651 (9th Cir. 1996); Chakales v. Commissioner, T.C. Memo. 1994-408 (reliance on a long-term adviser, who was a tax attorney and accountant, and who in turn relied on a promoter of the venture, held unreasonable), affd. 79 F.3d 726 (8th Cir. 1996); Kozlowski v. Commissioner, T.C. Memo. 1993-430 (reliance on an adviser held unreasonable absent a showing that the adviser understood the transaction and was qualified to give an opinion whether it was bona fide), affd. without published opinion 70 F.3d 1279 (9th Cir. 1995); Freytag v. Commissioner, 89 T.C. 849 (1987) (reliance on tax advice given by attorneys and C.P.A.'s held unreasonable absent a showing that the taxpayers consulted any experts regarding the bona fides of the transactions).  Here we have found that neither Tucker nor Becker, the advisers consulted by petitioner, possessed sufficient knowledge of the plastics recycling business to render a competent opinion.  This circumstance has been deemed relevant by the Court of Appeals for the Second Circuit, the court to which appeal in these cases lies.  See David v. Commissioner, 43 F.3d at 789-790 (taxpayers' reliance on expert advice not reasonable where expert lacks knowledge of business in which taxpayers invested); Goldman v. Commissioner, 39 F.3d at 408 (same).  Accordingly, we shall not relieve petitioners of the negligence additions to tax based upon the Court of Appeals'

decisions in the <u>Durrett</u> and <u>Chamberlain</u> cases.[12]

### 5. Conclusion as to Negligence

Under the circumstances of these consolidated cases, petitioners failed to exercise due care in claiming large deductions and tax credits with respect to the Partnerships on their Federal income tax returns. We hold that petitioner did not reasonably rely upon the offering memoranda, Tucker and Becker, or in good faith investigate the underlying viability, financial structure, and economics of the Partnership transactions. We are unconvinced by the claim of petitioner, an experienced business and science journalist and editor with a leading national investigative news magazine, that he reasonably failed to inquire about his investments and simply relied on the offering circulars and Becker Co., despite warnings in the offering circulars and explanations by Tucker and Becker about the limitations of Becker's investigation. Petitioner knew or should have known better. We hold, upon consideration of the entire record, that petitioners are liable for the negligence additions to tax under section 6653(a)(1) and (2) for the taxable years at issue. Respondent is sustained on this issue.

---

[12]   Other cases cited by petitioners are inapplicable and distinguishable for the following general, nonexclusive reasons: (1) They involve far less sophisticated, if not unsophisticated, taxpayers; (2) the reasonableness of the respective taxpayers' reliance on expert advice was established in those cases on grounds that do not exist here; and (3) the advice given was within the adviser's area of expertise.

B.  Section 6659--Valuation Overstatement

In notices of deficiency, respondent determined that petitioners were liable for the section 6659 addition to tax on the portion of their underpayments attributable to valuation overstatement.  Petitioners have the burden of proving that respondent's determinations of the section 6659 additions to tax are erroneous.  Rule 142(a); Luman v. Commissioner, 79 T.C. at 860-861.  In docket No. 27392-89, in her answer to petition respondent asserted an increased amount under section 6659.  Respondent has the burden of proof with respect to the increased addition to tax.  Rule 142(a); Bagby v. Commissioner, 102 T.C. 596, 612 (1994).

A graduated addition to tax is imposed when an individual has an underpayment of tax that equals or exceeds $1,000 and "is attributable to" a valuation overstatement.  Sec. 6659(a), (d).  A valuation overstatement exists if the fair market value (or adjusted basis) of property claimed on a return equals or exceeds 150 percent of the amount determined to be the correct amount.  Sec. 6659(c).  If the claimed valuation exceeds 250 percent of the correct value, the addition is equal to 30 percent of the underpayment.  Sec. 6659(b).

Petitioners claimed tax benefits, including an investment tax credit and a business energy credit, based on purported values of $1,162,666 for each Sentinel EPE recycler.  Petitioners concede that the fair market value of a Sentinel EPE recycler in

1981 was not in excess of $50,000.  Therefore, if disallowance of petitioners' claimed tax benefits is attributable to such valuation overstatements, petitioners are liable for the section 6659 additions to tax at the rate of 30 percent of the portions of their underpayments attributable to such valuation overstatements.

Petitioners contend that section 6659 does not apply in their consolidated cases for the following three reasons:  (1) Disallowance of the claimed tax benefits was attributable to other than a valuation overstatement; (2) petitioners' concession of the claimed tax benefits precludes imposition of the section 6659 additions to tax; and (3) respondent erroneously failed to waive the section 6659 additions to tax.  We reject each of these arguments for reasons set forth below.

### 1.  The Grounds for Petitioners' Underpayments

Section 6659 does not apply to underpayments of tax that are not "attributable to" valuation overstatements.  See McCrary v. Commissioner, 92 T.C. 827 (1989); Todd v. Commissioner, 89 T.C. 912 (1987), affd. 862 F.2d 540 (5th Cir. 1988).  To the extent taxpayers claim tax benefits that are disallowed on grounds separate and independent from alleged valuation overstatements, the resulting underpayments of tax are not regarded as attributable to valuation overstatements.  Krause v. Commissioner, 99 T.C. at 178 (citing Todd v. Commissioner, supra).  However, when valuation is an integral factor in

disallowing deductions and credits, section 6659 is applicable. See Illes v. Commissioner, 982 F.2d 163, 167 (6th Cir. 1992), affg. T.C. Memo. 1991-449; Gilman v. Commissioner, 933 F.2d 143, 151 (2d Cir. 1991) (the section 6659 addition to tax applies if a finding of lack of economic substance is "due in part" to a valuation overstatement), affg. T.C. Memo. 1989-684; Masters v. Commissioner, T.C. Memo. 1994-197, affd. without published opinion 70 F.3d 1262 (4th Cir. 1995); Harness v. Commissioner, T.C. Memo. 1991-321.

Petitioners argue that the disallowance of the claimed tax benefits was not "attributable to" a valuation overstatement. According to petitioners, the tax benefits were disallowed because the Partnership transactions are sham transactions lacking economic substance, not because of any valuation overstatements. It follows, petitioners reason, that because the "attributable to" language of section 6659 requires a direct causative relationship between a valuation overstatement and an underpayment in tax, section 6659 cannot apply to their deficiencies. Petitioners cite the following cases to support this argument: Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408; Gainer v. Commissioner, 893 F.2d 225 (9th Cir. 1990), affg. T.C. Memo. 1988-416; McCrary v. Commissioner, supra; and Todd v. Commissioner, supra.

Petitioners' argument rests on the mistaken premise that our holding herein that the Partnership transactions lacked economic

substance was separate and independent from the overvaluation of the Sentinel EPE recyclers. To the contrary, in holding that the Partnership transactions lacked economic substance, we relied heavily upon the overvaluation of the recyclers. Overvaluation of the recyclers was an integral factor in regard to: (1) The disallowed tax credits and other benefits in these cases; (2) the underpayments of tax; and (3) our finding that the Partnership transactions lacked economic substance.

Petitioners argue that in Provizer v. Commissioner, T.C. Memo. 1992-177, we found that the Clearwater transaction lacked economic substance for reasons independent of the valuation reported in that case. According to petitioners, the purported value of the recyclers in the Clearwater transaction was predicated upon a projected stream of royalty income, and this Court merely rejected the taxpayers' valuation method. Petitioners misread and distort our Provizer opinion. In the Provizer case, overvaluation of the Sentinel EPE recyclers, irrespective of the technique employed by the taxpayers in their efforts to justify the overvaluation, was the dominant factor that led us to hold that the Clearwater transaction lacked economic substance. Likewise, overvaluation of the Sentinel recyclers in these cases is the ground for our holding herein that the Partnership transactions lacked economic substance.

Moreover, a virtually identical argument was recently rejected in Gilman v. Commissioner, supra, by the Court of

Appeals for the Second Circuit, the court to which appeal in these cases lies. See Golsen v. Commissioner, 54 T.C. 742, 756-758 (1970), affd. 445 F.2d 985 (10th Cir. 1971). In the Gilman case, the taxpayers engaged in a computer equipment sale and leaseback transaction that this Court held was a sham transaction lacking economic substance. The taxpayers therein, citing Todd v. Commissioner, supra, and Heasley v. Commissioner, supra, argued that their underpayment of taxes derived from nonrecognition of the transaction for lack of economic substance, independent of any overvaluation. The Court of Appeals for the Second Circuit sustained imposition of the section 6659 addition to tax because overvaluation of the computer equipment contributed directly to this Court's earlier conclusion that the transaction lacked economic substance and was a sham. Gilman v. Commissioner, supra at 151. In addition, the Court of Appeals for the Second Circuit agreed with this Court and with the Court of Appeals for the Eighth Circuit that "'when an underpayment stems from disallowed * * * investment credits due to lack of economic substance, the deficiency is * * * subject to the penalty under section 6659."' Id. at 151 (quoting Massengill v. Commissioner, 876 F.2d 616, 619-620 (8th Cir. 1989), affg. T.C. Memo. 1988-427); see also Rybak v. Commissioner, 91 T.C. at 566-567; Zirker v. Commissioner, 87 T.C. 970, 978-979 (1986); Donahue v. Commissioner, T.C. Memo. 1991-181, affd. without published opinion 959 F.2d 234 (6th Cir. 1992), affd. sub nom. Pasternak v.

<u>Commissioner</u>, 990 F.2d 893 (6th Cir. 1993).

Petitioners' reliance on <u>Gainer v. Commissioner</u>, <u>supra</u>; <u>McCrary v. Commissioner</u>, 92 T.C. 827 (1989), and <u>Todd v. Commissioner</u>, <u>supra</u>, is misplaced. In those cases, in contrast to the consolidated cases herein, it was found that a valuation overstatement did not contribute to an underpayment of taxes. In the <u>Todd</u> and <u>Gainer</u> cases, the underpayments were due exclusively to the fact that the property in each case had not been placed in service. In the <u>McCrary</u> case, the underpayments were deemed to result from a concession that the agreement at issue was a license and not a lease. Although property was overvalued in each of those cases, the overvaluations were not the ground on which the taxpayers' liability was sustained. In contrast, "a different situation exists where a valuation overstatement * * * is an integral part of or is inseparable from the ground found for disallowance of an item." <u>McCrary v. Commissioner</u>, <u>supra</u> at 859. Petitioners' consolidated cases present just such a "different situation": overvaluation of the recyclers was integral to and inseparable from petitioners' claimed tax benefits and our holding that the Partnership transactions lacked economic substance.[13]

[13]   To the extent that <u>Heasley v. Commissioner</u>, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408, merely represents an application of <u>Todd v. Commissioner</u>, 89 T.C. 912 (1987), affd. 862 F.2d 540 (5th Cir. 1988), we consider it distinguishable. To the extent that the reversal in the <u>Heasley</u> case is based on a concept that where an underpayment derives from the disallowance

2.  Concession of the Deficiencies

Petitioners argue that their concession of the deficiencies precludes imposition of the section 6659 additions to tax. Petitioners contend that their concession renders any inquiry into the grounds for such deficiencies moot.  Absent such inquiry, petitioners argue that it cannot be known whether their underpayments were attributable to a valuation overstatement or another discrepancy.  Without a finding that a valuation overstatement contributed to an underpayment, according to petitioners, section 6659 cannot apply.  In support of this line of reasoning, petitioners rely heavily upon Heasley v. Commissioner, supra, and McCrary v. Commissioner, supra.

Petitioners' open-ended concession does not obviate our finding that the Partnership transactions lacked economic substance due to overvaluation of the recyclers.  This is not a situation where we have "to decide difficult valuation questions for no reason other than the application of penalties."  See McCrary v. Commissioner, supra at 854 n.14.  The value of the Sentinel EPE recycler was established in Provizer v. Commissioner, supra, and stipulated by the parties.  As a

_____

of a transaction for lack of economic substance, the underpayment cannot be attributable to an overvaluation, this Court and the Court of Appeals for the Second Circuit have disagreed.  See Gilman v. Commissioner, 933 F.2d 143, 151 (2d Cir. 1991) ("The lack of economic substance was due in part to the overvaluation, and thus the underpayment was attributable to the valuation overstatement."), affg. T.C. Memo. 1989-684.

consequence of the inflated value assigned to the recyclers by the Partnerships, petitioners claimed deductions and credits that resulted in underpayments of tax, and we held that the Partnership transactions lacked economic substance. Regardless of petitioners' concession, in these cases the underpayments of tax were attributable to the valuation overstatements.

Moreover, concession of the investment tax credit in and of itself does not relieve taxpayers of liability for the section 6659 addition to tax. See Dybsand v. Commissioner, T.C. Memo. 1994-56; Chiechi v. Commissioner, T.C. Memo. 1993-630. Instead, the ground upon which the investment tax credit is disallowed or conceded is significant. Dybsand v. Commissioner, supra. Even in situations in which there are arguably two grounds to support a deficiency and one supports a section 6659 addition to tax and the other does not, the taxpayer may still be liable for the addition to tax. Gainer v. Commissioner, 893 F.2d at 228; Irom v. Commissioner, 866 F.2d 545, 547 (2d Cir. 1989), vacating in part T.C. Memo. 1988-211; Harness v. Commissioner, T.C. Memo. 1991-321.

In the present consolidated cases, no argument was made and no evidence was presented to the Court that disallowance and concession of the claimed investment tax credits and other tax benefits related to anything other than a valuation overstatement. To the contrary, petitioners stipulated substantially the same facts concerning the Partnership

transactions as we found in <u>Provizer v. Commissioner</u>, T.C. Memo. 1992-177. In the <u>Provizer</u> case, we held that the taxpayers were liable for the section 6659 addition to tax because the underpayment of taxes was directly related to the overvaluation of the Sentinel EPE recyclers. The overvaluation of the recyclers, exceeding 2,325 percent, was an integral part of our findings in <u>Provizer</u> that the transaction was a sham and lacked economic substance. Similarly, the records in these cases plainly show that the overvaluation of the recyclers is integral to and is the core of our holding that the underlying transactions here were shams and lacked economic substance.

Petitioners' reliance on <u>McCrary v. Commissioner</u>, 92 T.C. 827 (1989), is misplaced. In that case, the taxpayers conceded disentitlement to their claimed tax benefits, and the section 6659 additions to tax were held inapplicable. However, the concessions of the claimed tax benefits, in and of themselves, did not preclude imposition of the section 6659 additions to tax. In <u>McCrary v. Commissioner</u>, <u>supra</u>, the section 6659 addition to tax was disallowed because the agreement at issue was conceded to be a license and not a lease. In contrast, the records in petitioners' cases plainly show that petitioners' underpayments were attributable to overvaluation of the Sentinel recyclers. We hold that petitioners' reliance on <u>McCrary v. Commissioner</u>,

supra, is inappropriate.[14]

We held in Provizer v. Commissioner, supra, that each Sentinel EPE recycler had a fair market value not in excess of $50,000. Our finding in the Provizer case that the Sentinel EPE recyclers had been overvalued was integral to and inseparable from our holding of a lack of economic substance. Petitioners stipulated that the Partnership transactions were similar to the Clearwater transaction described in the Provizer case, and that the fair market value of a Sentinel EPE recycler in 1981 was not in excess of $50,000. Given those concessions, and the fact that the record here plainly shows that the overvaluations of the recyclers was the only reason for the disallowance of the claimed tax benefits, we conclude that the deficiencies were attributable to overvaluation of the Sentinel EPE recyclers.

3. Section 6659(e)

Petitioners argue that respondent erroneously failed to waive the section 6659 additions to tax. Section 6659(e) authorizes the Commissioner to waive all or part of the addition to tax for valuation overstatements if taxpayers establish that there was a reasonable basis for the adjusted bases or valuations

---

[14] Petitioners' citation of Heasley v. Commissioner, supra, in support of the concession argument is also inappropriate. That case was not decided by the Court of Appeals for the Fifth Circuit on the basis of a concession. Moreover, see supra note 13, to the effect that the Court of Appeals for the Second Circuit and this Court have not followed the Heasley opinion with respect to the application of sec. 6659.

claimed on the returns and that such claims were made in good faith. The Commissioner's refusal to waive a section 6659 addition to tax is reviewable by this Court for abuse of discretion. Krause v. Commissioner, 99 T.C. at 179. Abuse of discretion has been found in situations where the Commissioner's refusal to exercise her discretion is arbitrary, capricious, or unreasonable. See Mailman v. Commissioner, 91 T.C. 1079 (1988); Estate of Gardner v. Commissioner, 82 T.C. 989 (1984); Haught v. Commissioner, T.C. Memo. 1993-58.

We note initially that petitioners did not request respondent to waive the section 6659 additions to tax until well after the trial of these consolidated cases. Petitioners made their request more than 6 months after the trial of these consolidated cases. We are reluctant to find that respondent abused her discretion in these consolidated cases when she was not timely requested to exercise it and there is no direct evidence of any abuse of administrative discretion. Haught v. Commissioner, supra; cf. Wynn v. Commissioner, T.C. Memo. 1995-609; Klieger v. Commissioner, T.C. Memo. 1992-734.

However, we do not decide this issue solely on petitioners' failure timely to request waivers, but instead, we have considered the issue on its merits. Petitioners urge that they relied on the respective offering materials and Tucker in deciding on the valuation claimed on their tax returns. Petitioners contend that such reliance was reasonable and,

therefore, that respondent should have waived the section 6659 additions to tax.[15]  However, as we explained above in finding petitioners liable for the negligence additions to tax, petitioners' purported reliance on the offering materials and Tucker was not reasonable.

Petitioners did not carefully read the offering memoranda. To the extent that they reviewed either of them, they did not give due consideration to the numerous warnings and caveats contained therein.  We found petitioner's recollection of events to be unreliable and his testimony suspect.  Becker possessed no special qualifications or professional skills in the recycling or plastics industries, and the record indicates the same was true of Tucker.  Despite these obvious limitations, Tucker, Becker, and petitioners never hired or consulted any plastics engineering or technical experts with respect to the Plastics Recycling transactions.  Becker spoke with Canno, who apparently had some knowledge of the plastics industry, but the substance of Canno's purported comments is doubtful and he had only minimal information about the transaction anyway.  At trial, Becker confirmed that in the end he relied exclusively on PI, its personnel, and the offering materials as to the value and

---

[15]   In their posttrial brief, petitioners referenced the reports prepared by Carmagnola in support of the reasonableness of the claimed valuation.  For reasons discussed supra, we consider the reports prepared by Carmagnola to be unreliable and of no consequence.

purported uniqueness of the machines.

In support of their contention that they acted reasonably, petitioners cite Mauerman v. Commissioner, 22 F.3d 1001 (10th Cir. 1994), revg. T.C. Memo. 1993-23. However, the facts in the Mauerman case are distinctly different from the facts of these cases. In Mauerman, the Tenth Circuit Court of Appeals held that the Commissioner had abused her discretion for not waiving a section 6661 addition to tax. Like the section 6659 addition, a section 6661 addition to tax may be waived by the Commissioner if the taxpayer demonstrates that there was reasonable cause for his underpayment and that he acted in good faith. Sec. 6661(c). The taxpayer in Mauerman relied upon independent attorneys and accountants for advice as to whether payments were properly deductible or capitalized. The advice relied upon by the taxpayer in Mauerman was within the scope of the advisers' expertise, the interpretation of the tax laws as applied to undisputed facts. In these consolidated cases, particularly with respect to valuation, petitioners relied upon advice that was outside the scope of expertise and experience of Tucker and Becker. Consequently, we consider petitioners' reliance on the Mauerman case inapplicable.

We hold that petitioners did not have a reasonable basis for the adjusted bases or valuations claimed on their tax returns with respect to their investments in the Partnerships. In these consolidated cases, respondent could find that petitioner's

purported reliance on the offering materials, Tucker, and Becker was unreasonable.  The record in these consolidated cases does not establish an abuse of discretion on the part of respondent but supports respondent's position.  We hold that respondent's refusal to waive the section 6659 addition to tax is not an abuse of discretion.  Petitioners are liable for the respective section 6659 additions to tax at the rate of 30 percent of the portions of their underpayments attributable to valuation overstatements. Respondent is sustained on this issue.

C. Petitioners' Motion For Leave To File Motion For Decision Ordering Relief From the Negligence Penalty and the Penalty Rate of Interest and To File Supporting Memorandum of Law

Long after the trial of these consolidated cases, petitioners filed a Motion For Leave To File Motion For Decision Ordering Relief From the Negligence Penalty and the Penalty Rate of Interest and To File Supporting Memorandum of Law under Rule 50.  Petitioners also lodged with the Court a motion for decision seeking relief from the additions to tax for negligence and from the increased rate of interest, with attachments, and a memorandum in support of the motion.  Respondent filed an objection, with attachments, and a memorandum in support thereof, and petitioners thereafter filed a reply memorandum.  Petitioners argue that they should be afforded the same settlement that was reached between other taxpayers and the IRS in docket Nos. 10382-86 and 10383-86, each of which was styled Miller v. Commissioner. See Farrell v. Commissioner, T.C. Memo. 1996-295 (denying a

motion similar to petitioners' motion); see also <u>Gollin v. Commissioner</u>, T.C. Memo. 1996-454; <u>Grelsamer v. Commissioner</u>, T.C. Memo. 1996-399; <u>Zenkel v. Commissioner</u>, T.C. Memo. 1996-398.

Counsel for petitioners seek to raise a new issue long after the trial of these consolidated cases. Resolution of such issue might well require a new trial. Such a further trial "would be contrary to the established policy of this Court to try all issues raised in a case in one proceeding and to avoid piecemeal and protracted litigation." <u>Markwardt v. Commissioner</u>, 64 T.C. 989, 998 (1975); see also <u>Robin Haft Trust v. Commissioner</u>, 62 T.C. 145, 147 (1974). Consequently, under the circumstances here, at this late date in the litigation proceedings, long after trial and briefing and after the issuance of numerous opinions on issues and facts closely analogous to those in these consolidated cases, petitioners' motion for leave is not well founded. <u>Farrell v. Commissioner</u>, <u>supra</u>.

Even if petitioners' motion for leave were granted, the arguments set forth in the motion and the attached memorandum lodged with this Court are invalid, and the motion would be denied. Therefore, and for reasons set forth in more detail below, petitioners' motion for leave shall be denied.

Some of our discussion of background and circumstances underlying petitioners' motion is drawn from documents submitted by the parties and findings of this Court in two earlier decisions. See <u>Estate of Satin v. Commissioner</u>, T.C. Memo. 1994-

435; <u>Fisher v. Commissioner</u>, T.C. Memo. 1994-434.  Such matters are not disputed by the parties.  We discuss the background matters for the sake of completeness.  As we have noted, granting petitioners' motion for leave would require further proceedings.

The <u>Estate of Satin</u> and <u>Fisher</u> cases involved Stipulation of Settlement agreements (piggyback agreements) made available to taxpayers in the Plastics Recycling project, whereby taxpayers could agree to be bound by the results of three test cases: <u>Provizer v. Commissioner</u>, T.C. Memo. 1992-177, and the two <u>Miller</u> cases.  We held in <u>Estate of Satin</u> and <u>Fisher</u> that the terms of the piggyback agreement bound the parties to the results in all three lead cases, not just the <u>Provizer</u> case.  Petitioners assert that the piggyback agreement was extended to them, but they do not claim to have accepted the offer timely, so they effectively rejected it.[16]

In or about February 1988, a settlement offer (the Plastics Recycling project settlement offer or the offer) was made available by respondent in all docketed Plastics Recycling cases and subsequently, in all nondocketed cases.  <u>Baratelli v. Commissioner</u>, T.C. Memo. 1994-484.  Pursuant to the offer, taxpayers had 30 days to accept the following terms:  (1)

[16]    In their motion for decision, petitioners state:  "After the lead counsel for taxpayers and Respondent had agreed upon the designation of the lead cases, <u>Respondent's counsel prepared piggyback agreements and offered them to counsel for the taxpayers in this case</u> and to other taxpayers." (Emphasis added.)

Allowance of a deduction for 50 percent of the amount of the cash investment in the venture in the year(s) of investment to the extent of loss claimed; (2) Government concession of the substantial understatement of tax penalties under section 6661 and the negligence additions to tax under section 6653(a)(1) and (2); (3) taxpayer concession of the section 6659 addition to tax for valuation overstatement and the increased rate of interest under section 6621; and (4) execution of a closing agreement (Form 906) stating the settlement and resolving the entire matter for all years.[17]  Petitioners assert that the Plastics Recycling project settlement offer was extended to them, but they did not accept the offer timely, so they effectively rejected it.[18]

In December 1988, the <u>Miller</u> cases were disposed of by settlement agreement between the taxpayers and respondent.[19]

---

[17]  Although the record does not include a settlement offer to petitioners, petitioners have attached to their motion for decision a copy of a settlement offer to another taxpayer with respect to a plastics recycling case, and respondent has not disputed the accuracy of the statement of the plastics recycling settlement offer.

[18]  In their motion for decision, petitioners state: "Respondent formulated a standard settlement position <u>which was extended to all taxpayers</u> having docketed or non-docketed cases in the plastics recycling group, <u>including Petitioner</u>." (Emphasis added.)

[19]  Although it is not otherwise a part of the record in these consolidated cases, respondent attached copies of the <u>Miller</u> closing agreement and disclosure waiver to her objection to petitioners' motion for leave, and petitioners do not dispute the accuracy of the document.

This Court entered decisions based upon those settlements on December 22, 1988. The settlement provided that the taxpayers in the Miller cases were liable for the addition to tax under section 6659 for valuation overstatement, but not for the additions to tax under the provisions of section 6661 and section 6653(a). The increased interest under section 6621(c), premised solely upon Miller's interest in the recyclers for the taxable years at issue, was not applicable because Miller made payments prior to December 31, 1984, so no interest accrued after that time. Respondent did not notify petitioners or any other taxpayers of the disposition of the Miller cases. Estate of Satin v. Commissioner, supra; Fisher v. Commissioner, supra.

Petitioners argue that they are similarly situated to Miller, the taxpayer in the Miller cases, and that pursuant to the principle of "equality" they are therefore entitled to the same settlement agreement executed by respondent and Miller in those cases. In effect, petitioners seek to resurrect the piggyback agreement offer and/or the settlement offer they previously failed to accept.

Petitioners contend that under the principle of equality, the Commissioner has a duty of consistency toward similarly situated taxpayers and cannot tax one and not tax another without some rational basis for the difference. United States v. Kaiser, 363 U.S. 299, 308 (1960) (Frankfurter, J., concurring); see Baker v. United States, 748 F.2d 1465 (11th Cir. 1984); Farmers' &

Merchants' Bank v. United States, 476 F.2d 406 (4th Cir. 1973). According to petitioners, the principle of equality precludes the Commissioner from making arbitrary distinctions between like cases. See Baker v. Commissioner, 787 F.2d 637, 643 (D.C. Cir. 1986), vacating 83 T.C. 822 (1984).

The different tax treatment accorded petitioners and Miller was not arbitrary or irrational. While petitioners and Miller both invested in the Plastics Recycling project, their actions with respect to such investments provide a rational basis for treating them differently. Miller foreclosed any potential liability for increased interest in his cases by making payments prior to December 31, 1984; no interest accrued after that date. In contrast, petitioners made no such payment, and they conceded that the increased rate of interest under section 6621(c) applies in their consolidated cases. Liability for the increased rate of interest is the principal difference between the settlement in the Miller cases, which petitioners declined when they failed to accept the piggyback agreement offer, and the settlement offer that petitioners also failed to accept.

Petitioners argue that section 6621(c) must have been an issue in the Miller cases since each of the decisions in Miller recites "That there is no increased interest due from the petitioner[s] for the taxable years [at issue] under the provisions of IRC section 6621(c)." According to petitioners, "Surely, if the Millers were not otherwise subject to the penalty

interest provisions because of the particular timing of their tax payments, there would have been no need for the Court to include such a recital in its decisions." (Emphasis added.) This argument by petitioners is entirely conjectural and is not supported by the documentation on which counsel relies. In fact, the recital that no increased interest under section 6621(c) was due in the Miller cases was an express term of the settlement documents in those cases and apparently included in the decisions for completeness and accuracy. There is nothing on the record in the present consolidated cases, or in the Court's opinions in Estate of Satin v. Commissioner, T.C. Memo. 1994-435, or Fisher v. Commissioner, T.C. Memo. 1994-434, or in any of the material submitted to us in these consolidated cases that would indicate that the Millers were "otherwise subject to the penalty interest provisions". Petitioners' argument is based on a false premise.

We find that petitioners and Miller were treated equally to the extent they were similarly situated, and differently to the extent they were not. Miller foreclosed the applicability of the section 6621(c) increased rate of interest in his cases, while petitioners concede it applies in their cases. Petitioners failed to accept a piggyback settlement offer that would have entitled them to the settlement reached in the Miller cases, and also rejected a settlement offer made to them prior to trial of a test case. In contrast, Miller negotiated for himself and accepted an offer that was essentially the same as the Plastics

Recycling project settlement offer rejected by petitioners prior to trial.  Accordingly, petitioners' motion is not supported by the principle of equality on which they rely.  Cf. <u>Baratelli v. Commissioner</u>, T.C. Memo. 1994-484.

In order to reflect the foregoing,

<u>An appropriate order will be issued denying petitioners' motion, and decisions will be entered under Rule 155</u>.